```
        IN THE UNITED STATES DISTRICT COURT FOR THE
                 EASTERN DISTRICT OF OKLAHOMA
```

RICKY L. MULLANIX,            )
                              )
          Plaintiff,          )
                              )
v.                            )     Case No. CIV-16-481-KEW
                              )
NANCY A. BERRYHILL, Acting    )
Commissioner of Social        )
Security Administration,      )
                              )
          Defendant.          )

## OPINION AND ORDER

Plaintiff Ricky L. Mullanix (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is **AFFIRMED**.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on September 5, 1976 and was 39 years old at the time of the ALJ's latest decision. Claimant completed his education through the eleventh grade with special education classes. Claimant has worked in the past as a taco maker, can maker, stocker, janitor, retail department manager, and laborer. Claimant alleges an inability to work beginning July 6, 2011, as amended in the latest administrative hearing due to limitations

3

resulting from heart problems, mental problems, back problems, and high blood pressure.

## Procedural History

On June 21, 2011, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act.  Claimant's applications were denied initially and upon reconsideration.  After an administrative hearing was conducted by Administrative Law Judge ("ALJ") B. D. Crutchfield, the ALJ entered an unfavorable decision on May 29, 2013.  The Appeals Council denied review of the decision on September 22, 2014.  This Court, however, reversed the ALJ's decision and remanded the case to Defendant for further proceedings on March 29, 2016.

Upon remand by the Appeals Council, ALJ Crutchfield conducted a supplemental administrative hearing by video on August 2, 2016 with Claimant appearing in Muskogee, Oklahoma and the ALJ presiding from Tulsa, Oklahoma.  On August 31, 2016, the ALJ entered a second unfavorable decision.  The Appeals Council took no action on the review.  As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.984, 416.1484.

### Decision of the Administrative Law Judge

The ALJ made her decision at step four of the sequential evaluation. She determined that while Claimant suffered from severe impairments, he retained the residual functional capacity ("RFC") to perform his past relevant work. The ALJ made alternative findings at step five that Claimant could perform medium work with limitations.

### Error Alleged for Review

Claimant asserts the ALJ committed error in (1) the step four and five analysis; (2) failing to properly weigh all pertinent medical source evidence; and (3) performing an improper credibility assessment.

### Step Four and Five Determination

In her decision, the ALJ determined Claimant suffered from the severe impairments of minimal degenerative changes to the lower thoracic and lumbar spine, bipolar disorder, depression, and polysubstance abuse. (Tr. 520). The ALJ concluded that Claimant retained the RFC to perform medium work except that he was markedly limited in his ability to understand, remember, or carry out detailed instructions; moderately limited in his ability to maintain attention and concentration for extended periods; and markedly limited in his ability to interact appropriately with the

5

general public. Claimant could perform simple tasks with routine supervision and relate to supervisors and peers on a superficial work basis. Claimant could adapt to a work situation but cannot relate to the general public. (Tr. 523).

After consultation with a vocational expert, the ALJ concluded Claimant retained the RFC to perform his past relevant work as a janitor or laborer. (Tr. 532). Alternatively, the ALJ found Claimant could perform the representative jobs of hand packager, garbage collector, and plant laborer, all of which existed in sufficient numbers in the regional and national economies. (Tr. 533). As a result, the ALJ concluded Claimant was not under a disability from July 16, 2011 through the date of the decision. Id.

Claimant runs through a litany of varied errors which he contends warrants reversal of the ALJ's decision. Claimant first asserts that the ALJ could not alter her RFC findings on the maximum exertional level Claimant could perform from the prior decision without creating an inconsistency with this Court's remand order. In the first decision, the ALJ determined Claimant could perform light work while in the second decision she found Claimant could perform work at the medium exertional level. This Court reversed the ALJ's first decision and remanded the case for further

6

proceedings based upon the failure to consider the totality of the marked limitations offered by Dr. Gary Lindsay, a state agency mental health professional while giving his opinion "great weight". (Tr. 573-74). The ALJ was directed to reformulate the RFC with Dr. Lindsay's limitations considered. (Tr. 574). The discussion in the Report and Recommendation pertaining to the effect consideration of these limitations might have upon the SVP reasoning level was included to explain that the omission was not merely a harmless error. It was not a determination of the availability of jobs. The ALJ was also directed to modify her questioning of the vocational expert based upon any changes to the RFC. Id.

On remand, if the decision is vacated by the Appeals Council such as in this case, the ALJ is required to consider issues on remand *de novo*. See HALLEX § I-2-8-18, 1993 WL 643058. To the extent that this Court provided any required consideration to the ALJ, the opinion and restrictions imposed by Dr. Lindsay were considered and included in the RFC by the ALJ. (Tr. 531-32). Thus, the ALJ's decision "is not inconsistent with the Appeals Council's remand order" or this Court's remand instructions. 20 C.F.R. § 404.977(b). No error is attributed to the change in the exertional level contained in the RFC between the ALJ's two

decisions.

Claimant next asserts that the ALJ should have adopted the limitations found by Dr. Murff Box, who treated Claimant before the relevant time period. On June 20, 2007, Dr. Box filled out a form entitled "RESTRICTIONS - SPINE INJURIES." He placed a maximum of ten pounds for lifting, pushing/pulling a maximum of twenty pounds or a maximum of 40 pounds on rollers. Claimant would not climb ladders, stairs, or unprotected heights and no squatting, stooping in tight spaces. Claimant was to be allowed to sit, stand, or change positions as needed for comfort. (Tr. 345). These restrictions pre-dated the relevant period by some four years. Even considering this report, Dr. Box concluded that the MRI did not show evidence of significant disc disease but two degenerative changes with no spinal stenosis or nerve root encroachment. He concluded Claimant had suffered a work-related lumbar strain. (Tr. 364). The ALJ gave this opinion "some weight" but noted that no further treatment notes concerning Claimant's back strain appear in the medical record. (Tr. 525). Moreover, these restrictions outside of the relevant period appear to be temporary since they are based upon a finding of a work-related strain. It was, therefore, not error to have included Dr. Box's specific restrictions in the RFC.

8

Claimant also contends the ALJ should have included the findings of Dr. Beth Jeffries who conducted a mental status examination on July 16, 2011. Dr. Jeffries concluded that Claimant's judgment appeared to be impaired and his insights appeared to be poor. His impairment in judgment and insight

> likely does interfere with his ability to interact with people in social settings and certainly in occupational settings. Even though he may be able to understand both simple and complex instructions, but I think he would have difficulty implementing those instructions. He seems to be fairly sensitive to criticism. He tends to lash out when he feels that someone is making fun of him. I think his paranoia is related to his mood disorder. His inability to concentrate and focus on tasks would also be problematic for him within an occupational setting. I think he would have difficulty concentrating over the course of an 8 hour day and certainly over a 40 hour workweek. I think as the social interaction or pace and stress in the work setting increased, I think he would find it more difficult to perform effectively within those settings.

(Tr. 309).

Dr. Jeffries also believed Claimant would benefit from an overseer of his funds. Id. She diagnosed Claimant with bipolar disorder, with psychotic features and alcohol abuse. (Tr. 308).

The ALJ set forth Dr. Jeffries' findings and accorded it "some weight as Dr. Jeffries had the opportunity to examine the claimant." (Tr. 527). He found the treatment record revealed Claimant's condition stabilized with "limited behavioral health

9

treatment (medication) when utilized appropriately." The ALJ found little support in the evidentiary record that Claimant "would have difficulty with (sic) simple decision." He determined Dr. Jeffries' examination was not consistent with her findings since Claimant had no difficulty with simple instructions during testing. The ALJ found Claimant's concentration and memory appeared grossly intact and concentration was only mildly impaired. (Tr. 527-28).

The ALJ relied in part upon the findings the reviewing mental professional, Dr. Gary Lindsay. Dr. Lindsay completed a Psychiatric Review Technique on August 26, 2011. He concluded Claimant was moderately limited in the areas of difficulties in maintaining social functioning and difficulties in maintaining concentration, persistence, or pace. (Tr. 329). He analyzed the evidence, including Dr. Jeffries' assessment, and concluded Claimant could only do simple work-related tasks with no contact with the general public due to functional limitations with social adaptation, pace, concentration, and persistence. (Tr. 331).

Dr. Lindsay also completed a mental RFC assessment. He found Claimant was markedly limited in the areas of the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to interact appropriately with the general public. He determined Claimant was

treatment (medication) when utilized appropriately." The ALJ found little support in the evidentiary record that Claimant "would have difficulty with (sic) simple decision." He determined Dr. Jeffries' examination was not consistent with her findings since Claimant had no difficulty with simple instructions during testing. The ALJ found Claimant's concentration and memory appeared grossly intact and concentration was only mildly impaired. (Tr. 527-28).

The ALJ relied in part upon the findings the reviewing mental professional, Dr. Gary Lindsay. Dr. Lindsay completed a Psychiatric Review Technique on August 26, 2011. He concluded Claimant was moderately limited in the areas of difficulties in maintaining social functioning and difficulties in maintaining concentration, persistence, or pace. (Tr. 329). He analyzed the evidence, including Dr. Jeffries' assessment, and concluded Claimant could only do simple work-related tasks with no contact with the general public due to functional limitations with social adaptation, pace, concentration, and persistence. (Tr. 331).

Dr. Lindsay also completed a mental RFC assessment. He found Claimant was markedly limited in the areas of the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to interact appropriately with the general public. He determined Claimant was

moderately limited in the area of the ability to maintain attention and concentration for extended periods. (Tr. 333-34). In the narrative portion of the RFC assessment, Dr. Lindsay found Claimant could perform simple tasks with routine supervision, could relate to supervisors and peers on a superficial work basis, could not relate to the general public, and could adapt to a work situation. (Tr. 335).

It is difficult to reconcile Dr. Jeffries' conclusions with the observations which she recorded. She noted Claimant's thought processes appeared logical and goal directed, was able to recall three words immediately with only a mild impairment of concentration. This mild impairment transforms into an "inability to concentrate" in the narrative conclusion. He understood simple and even complex instructions but Dr. Jeffries concluded Claimant would have difficulty implementing the instructions, without any reference to her clinical findings from her examination. (Tr. 309). The ALJ is entitled to give greater weight to the opinion of a non-examining consultant so long as he provides an adequate explanation for doing so. *See* Shubargo v. Barnhart, 161 Fed. Appx. 748, 754 (10th Cir. 2005). The ALJ provided a methodical evaluation of Dr. Jeffries' conclusion on Claimant's ability to engage in simple tasks which found support in Dr. Lindsay's

11

reviewing evaluation. No error is found in this assessment.

Claimant also challenges the ALJ's determination at step four in evaluating the three phases under Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996) to determine whether Claimant could perform his past relevant work. In the first phase, the ALJ must first determine the claimant's RFC. While Claimant disagrees with the limitations contained in the RFC, the ALJ satisfied this element.

In the second phase, the ALJ must determine the demands of the claimant's past relevant work. Id. In making this determination, the ALJ may rely upon the testimony of the vocational expert. Doyal v. Barnhart, 331 F.3d 758, 761 (10th Cir. 2003). The vocational expert stated the exertional requirements of Claimant's past relevant work upon inquiry. (Tr. 559-60). The ALJ made appropriate findings concerning Claimant's ability to perform these prior jobs. (Tr. 532). The second phase was adequately satisfied by the ALJ and vocational expert.

The third and final phase requires an analysis as to whether the claimant has the ability to meet the job demands found in phase two despite the limitations found in phase one. Winfrey, 92 F.3d at 1023. The ALJ made the appropriate comparative analysis to satisfy this phase. (Tr. 532, 561). This Court finds no error in

the ALJ's step four analysis.

**Consideration of the Other Source Evidence**

Claimant contends the ALJ failed to consider the opinions of non-acceptable medical sources. *See* 20 C.F.R. § 404.1502. The ALJ is required to evaluate opinions from non-acceptable sources with the same factors employed with medical opinion evidence. Soc. Sec. R. 06-3p, 2006 WL 2329939.

The ALJ discussed Claimant's visit to the Green Country Behavior Health clinic in 2009 and the diagnoses of major depressive disorder and alcohol dependence. (Tr. 526). Claimant then references various reports of his therapists at Green Country including counselors Patricia Lafon, Deborah Reed, Amy Irwin, Sandra Taber, Michael York, and PA Kadilyn Hourigan. This Court agrees with Defendant that the reports of these individuals largely regurgitate Claimant's statements rather than represent opinion evidence. (Tr. 279-82, 502-04, 415-16, 465-66, 757-59). To the extent the source made a finding as a result of examining Claimant, the finding showed a good prognosis or essentially normal results to testing. (Tr. 282, 504, 529-30, 417, 738, 761, 766, 768, 770, 772, 774, 777).

Claimant also references his low GAF scores which for the most part ranged from 55-65. (Tr. 292, 297, 302, 412, 462, 480, 484,

13

488, 492, 496, 500, 767, 769, 771, 773). A GAF score may be of considerable help to the ALJ in formulating the RFC but it is not essential to the RFC's accuracy and "taken alone does not establish an impairment serious enough to preclude an ability to work." Holcomb v. Astrue, 2010 WL 2881530, 2 (Okla.)(unpublished opinion) citing Howard v. Comm. of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002). This Court finds the ALJ was under no legal obligation to discuss Claimant's GAF scores or the consideration he gave to the scores.

### Credibility Determination

Claimant also asserts the ALJ performed a faulty credibility analysis. Claimant testified to learning disabilities and anger issues and his assessment that he is "extremely unstable emotionally without medication." (Tr. 546). Claimant lived with his mother in a home she rented. (Tr. 551). He found it hard to get along with people and he gets argumentative. (Tr. 50). Claimant sits at home and watches TV most of the time. (Tr. 51). He is separated from his wife. (Tr. 550). He gets angry daily without his medication. (Tr. 53).

The ALJ "granted little probative weight to the claimant's testimony because claimant's allegations are not fully consistent with the evidence of record." (Tr. 525). The ALJ discounted

14

complaints of heart issues because the medical evidence demonstrated little or no treatment for the condition. Complaints of back pain are not supported by the record which showed to be within normal limits. His gait was normal. His school records do not support his statement of learning disabilities. His mental status exam showed he could read and follow simple instructions. He remained calm and cooperative during the examination, calling into question his reports of anger. Claimant's medication and counseling has improved his condition. He has reported improvement in sleeping and mood with treatment every two months. He has used methamphetamine in the last year. Id.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of

15

any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ relied upon appropriate factors in evaluating the credibility of Claimant's statements. The nature and effectiveness of Claimant's treatment, the objective medical testing, and the inconsistencies between the claimed restrictions and Claimant's activities all form specific and legitimate reasons for the ALJ's questioning of Claimant's credibility.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge finds for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

DATED this 21st day of March, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE